***********
Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to receive further evidence or to rehear the parties or their representatives, the Full Commission upon review of the evidence modifies and affirms the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties in a Pre-Trial Agreement and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. All parties are properly before the Industrial Commission, and the Industrial Commission has jurisdiction over the parties and this claim. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. The employer-employee relationship existed between defendant-employer and plaintiff at all relevant times.
3. Zurich American Insurance Company was the workers' compensation carrier on risk for defendant-employer at all relevant times.
4. Plaintiff suffered a compensable injury by accident on 27 March 2002.
5. Plaintiff's average weekly wage at the time of the injury was sufficient to be compensated at the rate of $576.94 per week. Plaintiff is currently receiving $576.94 per week pursuant to N.C. Gen. Stat. § 97-29.
6. The parties have stipulated into evidence Industrial Commission forms and medical records.
 ***********
Based on the foregoing stipulations and the evidence presented, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff worked for defendant-employer as a job site superintendent. His duties included heavy lifting, walking, climbing on top of houses and crawling underneath them. Plaintiff had been working for defendant-employer for three months.
2. On 21 March 2002, plaintiff was cleaning up debris around a dumpster while working on a house. As he was putting some boards in the dumpster, one slipped and hit him on the elbow. At the time, plaintiff noticed a lot of bleeding, but he just cleaned it up and went to his next job. Plaintiff began to notice back pain and by 27 March 2002, he could not walk. He called in and reported that he was in pain and would not be working on 27 March 2002.
3. Prior to March 2002, plaintiff had been diagnosed with degenerative disc disease and a bulging disc on the right side. Dr. James P. McDonald treated him for his right side low back pain radiating through both legs from February 2001 until 8 March 2002, when Dr. McDonald referred plaintiff to Dr. Victor Freund, a neurosurgeon. Dr. McDonald also saw plaintiff on 8 April 2002 and 8 May 2002, when plaintiff presented for left-sided low back and hip pain. It was determined that plaintiff had developed a septic left sacroiliac joint.
4. Plaintiff reported to High Point Regional Hospital on 27 March 2002. He was given pain medication and sent home. On 30 March 2002, plaintiff was in so much pain that he was unable to get out of bed. His wife called an ambulance and plaintiff was taken to the hospital. He had a high fever, night sweats and excruciating pain on his left side. Plaintiff was given many tests to determine his condition. The medical staff found bone marrow abnormalities, which led to a diagnosis of staph infection. Plaintiff was questioned about how the staph infection was caused and indicated that it could have come from a cut or puncture wound. Plaintiff then related to the medical staff how he had been injured at work on 21 March 2002. Plaintiff's antibiotics were changed and he began to improve.
5. Plaintiff presented to the High Point Regional Hospital Emergency Room on 7 April 2002 for fever, night sweats and chills. Plaintiff was discharged on 7 April 2002. He presented to Dr. McDonald with complaints of left lower back pain radiating to the left hip and thigh. Dr. McDonald took plaintiff out of work on 8 April 2002. On 12 April 2002, plaintiff noted that his urine became a dark color. He was again admitted to the hospital. When plaintiff was discharged from the hospital on 18 April 2002, he was still having difficulty walking and was placed on crutches. Plaintiff was also still experiencing pain in his lower back and up the left side of his back. Plaintiff treated with Dr. McDonald again on 8 and 22 May 2002.
6. Dr. McDonald testified that plaintiff's complaints in 2001 were mainly about his low back in general, with more pain on the right side. In 2002, plaintiff's complaints were specifically about his left side. However, plaintiff's focal disc herniation was located centrally and toward the left at L3-4.
7. On 26 July 2002, Dr. McDonald recommended a physical therapy program for general conditioning and a functional capacity evaluation. On 16 September 2002, Dr. McDonald met with plaintiff to discuss the results of the functional capacity evaluation, which recommended plaintiff for medium duty. Plaintiff's job as a job site superintendent was medium to heavy duty. Dr. McDonald opined that plaintiff's recommendations from the functional capacity evaluation were a result of plaintiff's low back problems and his infection of the sacroiliac joint, in combination. Dr. McDonald recommended plaintiff for a work-hardening program under Dr. John Begovich. The program had a multi-disciplinary approach that helps with pain management through physical therapy, medical doctors and psychologists.
8. Dr. McDonald did not know what caused plaintiff's septic sacroiliac joint. As of 13 September 2002, Dr. McDonald had kept plaintiff out of work.
9. Dr. McDonald initially referred plaintiff to Dr. Freund for right side low back pain. However, when Dr. Victor Freund first saw plaintiff on 30 April 2002, he complained of left hip pain. Plaintiff presented with sharp, intense pain on his left side that severely limited his activities soon after hospitalization for the staph infection. Dr. Freund wrote Dr. Meaders to receive plaintiff's staph sepsis history. Plaintiff had been treated with antibiotics for five days. An MRI revealed inflammation in the left sacroiliac joint, iliac muscle and iliopsoas musculature. Dr. Freund testified that a puncture wound to plaintiff's elbow could affect plaintiff's hip because sepsis is an infection in the blood stream that can seed anywhere in the body.
10. By 21 May 2002, plaintiff had seen Dr. Meaders, who was treating plaintiff with intravenous antibiotics, Ancef and oral antibiotics. As of that date, plaintiff was seeing some improvement. On 23 July 2002, plaintiff was off antibiotics and still experiencing some pain in his left hip and left back.
11. Dr. Freund unequivocally opined that the sepsis and seeding into the joint aggravated plaintiff's original back pain. Further, plaintiff's tendency to put most of his weight on his right side because his left side hurt caused a worsening of plaintiff's back and right leg pain. Based on plaintiff's history and his examination, Dr. Freund testified that plaintiff's prior non-disabling back problems were aggravated by the staph infection in plaintiff's SI joint so that plaintiff became disabled. Dr. Freund referred plaintiff to Dr. Scheutzow, a physiatrist, for further treatment, including injections, pain management and physical therapy. Dr. Freund stated that plaintiff was unable to work the entire time that he was treating plaintiff, from 30 April 2002 until 23 July 2002. When Dr. Freund referred plaintiff to Dr. Scheutzow, plaintiff was not yet at maximum medical improvement.
12. Plaintiff treated with Dr. Mark H. Scheutzow and Dr. John Begovich for pain management. They both opined that plaintiff's condition had not changed since they first began treating him. Dr. Scheutzow testified that plaintiff's low back pain could be caused by a disc herniation at L3-4, spinal stenosis at L3-4 or L4-5, or irritation in the SI joint. Plaintiff was released back to the care of his family physician, Dr. McDonald. Plaintiff remained unable to work.
13. On 21 March 2002, plaintiff sustained a compensable injury by accident arising out of and in the course and scope of her employment with defendant-employer, although he was not disabled from work until 27 March 2002.
14. As a direct and proximate result of plaintiff's 21 March 2002 compensable injury, plaintiff sustained staph sepsis in his SI joint, which resulted in severe low back and left hip pain.
15. As a direct and proximate result of plaintiff's compensable injury on 21 March 2002, plaintiff was unable to earn wages in his former employment or in or any other employment from 27 March 2002 through the date of the hearing before the deputy commissioner and continuing.
16. Plaintiff is receiving temporary total disability benefits. He is entitled to continue to receive temporary total disability compensation until further order of the Industrial Commission.
17. As a direct and proximate result of plaintiff's compensable injury, plaintiff required medical treatment, all of which was reasonably necessary to effect a cure, provide relief and lessen plaintiff's period of disability.
18. Plaintiff continues to have pain and is entitled to additional medical treatment for his compensable injury.
 ***********
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On 21 March 2002, plaintiff sustained a compensable injury by accident arising out of and in the course and scope of his employment with defendant-employer when he sustained a puncture wound to his elbow, which unexpectedly resulted in a staph infection that settled into his SI joint, causing him severe pain in his left back and hip. N.C. Gen. Stat. § 97-2(6).
2. When a pre-existing, non-disabling, non-work-related condition is aggravated by an accidental injury arising out of and in the course of employment so that disability results, then the employer must compensate the employee for the entire resulting disability. Anderson v. N.C. Dept. of Transp., ___ N.C. App. ___, 595 S.E.2d 451 (2004).
3. As a direct and proximate result of plaintiff's compensable injury on 21 March 2002, plaintiff was unable to earn wages in his former employment or in or any other employment from 27 March 2002 through the date of hearing before the deputy commissioner and continuing. Plaintiff is entitled to temporary total disability compensation from 27 March 2002 and continuing. N.C. Gen. Stat. § 97-29.
4. Plaintiff's average weekly wage at the time of the injury was such that he receives $576.94 per week in compensation. N.C. Gen. Stat. § 97-2(5).
5. As a direct and proximate result of plaintiff's compensable injury, plaintiff required medical treatment, which was reasonably necessary to effect a cure, provide relief and lessen plaintiff's period of disability. N.C. Gen. Stat. § 97-25.
6. Plaintiff continues to have back and hip pain and is entitled to additional medical treatment for his compensable injury. Defendants are obligated to provide all medical treatment necessitated by plaintiff's injury. N.C. Gen. Stat. § 97-25.
 ***********
Based upon the foregoing Stipulations, Findings of Fact and Conclusions of Law, the Full Commission makes the following:
 AWARD
1. Defendants shall continue to pay plaintiff temporary total disability compensation at the rate of $576.94 per week until further order from the Industrial Commission. This amount is subject to the attorney fee awarded below.
2. Defendants shall pay plaintiff's attorney a reasonable attorney's fee in the amount of 25% of the compensation awarded to plaintiff. Every fourth check shall be paid directly to plaintiff's attorney.
3. Defendants shall pay all medical expenses incurred or to be incurred by plaintiff arising from his compensable injury by accident when the bills have been submitted to them and approved according to procedures adopted by the Industrial Commission.
4. Defendants shall pay the costs due this Commission.
This the ___ day of June 2004.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/_______________ DIANNE C. SELLERS COMMISSIONER
 S/_____________ PAMELA T. YOUNG VICE-CHAIR